**JAMES B. KING, WSBA #23274**
**CHRISTOPHER J. KERLEY, WSBA #16489**
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., 250, Spokane, WA 99201
P: (509) 455-5200 | F: (509) 455-3632
E: jking@ecl-law.com
E: Ckerley@ecl-law.com

*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **JACOB NIEDERQUELL,** | Cause No. **2:25-CV-00169-RLP** |
| Plaintiff, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **DOSANJH ENTERPRISES, INC. d/b/a 7-ELEVEN,** and **DAVID PETERSON.** | **6/5/2026** *Without Oral Argument* |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Jacob Niederquell ("Niederquell") likes to go barefoot. He claims he has a disability that prevents him from wearing shoes, and that Defendants (the franchisee operator of a 7-Eleven store and the manager who dealt directly with Niederquell), discriminated against him in violation of the Americans with Disabilities Act ("ADA") and its state counterpart, the Washington Law Against Discrimination ("WLAD"), by enforcing the franchisee's neutral policy requiring patrons to wear shoes.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 1



EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

Defendants request summary judgment dismissal because (1) Niederquell failed to give any notice to Defendants of an impairment substantially limiting a major life activity; (2) Niederquell's aversion to footwear does not substantially limit him in any major life activity and thus, Niederquell, as a matter of law, could not accurately provide the legally required information to Dosanjh; (3) assuming Niederquell is disabled, his requested accommodation-non-enforcement of the Dosanjh shoes policy was unreasonable because: (a) going barefoot in the Dosanjh store constituted a direct threat to the health and safety of Niederquell; (b) the footwear policy is necessary for Defendants' provision of goods and services in its store; and (c) Niederquell's requested accommodation of going barefoot was neither reasonable nor necessary, and would fundamental alter the nature of the goods and services provided in Defendants' store.

## II.    PERTINENT FACTS

The facts upon which this motion is based are set forth in Defendants' Statement of Material Facts Not in Dispute.

## III.    ARGUMENT AND AUTHORITIES

**A.** Summary Judgment Standard:

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Fed. R.*

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 2



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

*Civ. P. 56(a).* The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus., Co., v. Zenith Radio, Corp.,* 475 U.S. 574, 586 (1986) (non-moving party must present specific, significant probative Evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir. 1987). In determining whether a material fact exists, the court must consider the substantive evidentiary burden that the non-moving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254; *T.W. Elec. Serv., Inc.,* 809 F.2d at 630. A court must resolve any factual issues of controversy in favor of the non-moving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The non-moving party may not merely state that it will discredit the moving parties' evidence at trial, in the hopes that evidence can be developed at trial to support the

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 3



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

claim. *T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, non-specific statements and affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 888-89 (1990).

**B.** Title III of the ADA:

**1.    Niederquell's Claim Should be Dismissed Because He Failed to Provide Defendants with Adequate Notice of the Nature and Extent of his Alleged Disability and, Accordingly, Niederquell has not Shown that Defendants Discriminated Against Him on the Basis of a Disability.**

42 U.S.C. §12182(a) sets forth the general prohibition against a place of public accommodation discriminating against an individual on the basis of disability, and provides:

> (a) General Rule – No individual shall be discriminated against <u>on the basis of disability</u> in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. (emphasis added).

To have a valid Title III claim a plaintiff must prove he is disabled within the meaning of the ADA. *Molski v. MJ Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007). The ADA defines a "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 4

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102 (1).

Whether a plaintiff's condition constitutes a disability under the ADA involves three inquiries: (1) whether [the plaintiff's] condition was a physical impairment; (2) whether the life activities from which the plaintiff was impaired amounted to a major life activity; and (3) whether the plaintiff's impairment substantially limited him from performing identified major life activities. *Gribben v. United Parcel Service, Inc.,* 528 F.3d 1166, 1169 (9th Cir. 2008), citing *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998).

In order for a defendant to be liable for discrimination on the basis of disability under 42 U.S.C. §12182(a), the defendant must have had adequate knowledge of the plaintiff's claimed disability. See *Shaywitz v. American Board of Psychiatry and Neurology,* 848 F.Supp.2d 460, 467 (S.D.N.Y. 2012); *Wynne v. Tufts University School of Medicine,* 876 F.2d 791, 795 (1st Cir. 1992); *Mucci v Rutgers*, 2011 U.S. Dist. LEXIS 21580 at *62 (DNJ 2011) ("A defendant is not liable for failure to provide reasonable accommodations under the ADA if the plaintiff does not provide information needed to assess the request for accommodation."). *Castillo*

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 5

*v. Hudson Theatre, LLC,* 412 F.Supp.3d 447, 451 (S.D.N.Y. 2019). [1] Adequate knowledge is critical because merely having a medical diagnosis or an impairment does not make one disabled for purposes of the ADA. See *Toyota Motor Mfg., Kentucky, Inc., v. Williams,* 534 US 184, 195, 122 S. Ct. 681, 151 L.Ed.2d 615 (2002) (carpal tunnel syndrome not necessarily a disability under ADA); *Wong v. Regents of University of California,* 410 F.3d 1052, 1066 n.6 (9th Cir. 2005) (a person with a learning disability is not necessarily disabled under the ADA). The court can decide on summary judgment that a plaintiff's claimed medical or physical condition does not qualify as a disability under the ADA if the summary judgment record does not show a "genuine" issue for trial. See e.g. *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.,* 425 F. Supp. 3d 1234, 1240 (C.D. Cal. 2019) (back condition and diagnosed anxiety disorder not disability allowing plaintiff to avoid waiting in line at defendant's theme park where plaintiff, employed as a truck driver, spent "a lot of time" waiting in traffic on Los Angeles freeways).

Here, Niederquell failed to provide Defendants with notice of his alleged disability. Again, a disability is a "physical or mental impairment" that

---

[1] The plaintiff's condition alone may provide notice of his/her disability if it is 'obvious.'" See *Joe v. Olive Branch Assisted Living, LLC*, 2025 U.S. Dist. LEXIS 154240*11 (DCAZ 2025). Here, Niederquell's claimed disability was/is far from obvious.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 6

EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

"substantially limits one or more major life activities." 42 U.S.C. §12102 (1). Here, the summary judgment record shows that Niederquell's aversion to footwear is a personal preference, and that his purported "foot sensory impairment" does not and has never substantially limited any of his major life activities. In the summer of 2021, Niederquell wore Birkenstock sandals to perform landscaping work at his residence in order to prevent injuries to his feet from thorns. In January/February of 2023, while hospitalized in Deaconess Medical Center for 10 days, Niederquell wore slip resistant footwear in order to ambulate on the hospital floors. At various times over the years, and in various employment contexts, Niederquell has worn shoes, as required by his employer. He has also work footwear when incarcerated for various lengths of time. Niederquell has never had nerve testing done on his feet, ankle or legs below the knee by any physician. He has normal strength and range of motion in his lower legs and feet. He has never seen a medical doctor for his alleged aversion to footwear for diagnosis, testing or treatment.

Niederquell has never been substantially impaired in his ability to walk or work with or without footwear.

For a defendant to discriminate against a plaintiff "on the basis of disability", the plaintiff must have a disability and provide enough information to the defendant to support his/her claim of possessing a disability. Here, based on the summary judgment record Niederquell's "foot sensory issues" do not and have never

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 7

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

substantially limited him in any major life activities. Accordingly, Niederquell did not, and could not have put Defendants on notice of disability which Defendants might have been required to accommodate. Certainly his statement that he had sensory issues that prevented him from wearing shoes was insufficient.

**2.      Because Niederquell's going barefoot in Defendants' store constituted a direct threat to the health and safety of Niederquell, Defendants were entitled to exclude him from the store for refusing to comply with the store's footwear policy.**

42 U.S.C. §12182(b)(3) provides:

> Specific Construction – Nothing in this title [42 USC §12181, et seq.] shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity <u>where such individual poses a direct threat to the health or safety of others.</u> A true and "direct threat" <u>means a significant risk to the health or safety of others</u> that cannot be eliminated by a modification of policies, of practices, or procedures or by the provision of auxiliary aids or services. (emphasis added).

In the ADA Title I context, the United States Supreme Court has held that the direct threat defense includes situations where the allegedly disabled employee's condition would pose a direct threat to the health and safety of the employee himself. See *Chevron USA, Inc., v. Echazabal,* 436 U.S. 73, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002). The United States Supreme Court has described the Title I sections on "direct threat" and §12182(b)(3) of Title III as "parallel provisions". See *Bragdon v. Abbott,* 524 U.S. 624, 649, 118 S. Ct. 2196, 141 L.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 8

Ed.2d 540 (1998); See also *Castelan v. Universal Studios, Inc.,* 2014 U.S. Dist. LEXIS 9092 *19 (C.D. Cal. 2014) (ADA Title III allows for exclusion of person with disability from place of public accommodation for legitimate safety concerns, including safety of disabled person himself).

Here, Defendants were justified in excluding Niederquell from the store because his entry into the store without shoes presented a direct threat to his own health and safety. The Pines 7-Eleven sells products packaged in glass such as glass beverage bottles and food jars which are stocked on shelves in customer accessible areas. Certain products at the store are packaged in sharp plastic which creates a hazard to bare feet if the item is knocked to the floor, the package is opened and the packaging discarded on the floor, which can and does happen.

The 7-Eleven sells self service hot food and beverages including coffee, hot chocolate, hot water and a variety of hot prepared food items including taquitos, pizza, hot dogs, corn dogs, wings, potato wedges and eggrolls. The store also sells cold beverages, soda, ice and "Slurpee's." The hot food items are prepared for consumption in a 500-degree oven and then put in heated warming trays on the service table at a temperature set between 165 and 175 degrees.

All of the shopping in the 7-Eleven store is self-service. The customer selects an item from the shelf, from drink dispensers or from food tables. Hot food items

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 9



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

handled with tongs are in containers available for that purpose. The store provides condiments such as mustard, tarter sauce, mayonnaise, ketchup and cream for use by customers purchasing beverages and/or food items.

Spillage of greasy foods, condiments, liquids, ice, breakage of glass and the discarding of sharp packaging occurs regularly and can and does happen as often as several times during a shift. When spillage and breakage occurs, which it does, often multiple times during an 8 hour shift, this creates a slip and fall hazard as well as a risk of cuts, lacerations and burns to all customers, and customers not wearing footwear are at a greater risk of cuts, lacerations and burns.

Over recent years but more noticeably in the last 4-5 years, the store has experienced an increasing problem with discarded street drugs and drug paraphernalia being left in the store in both public areas and restrooms. Discarded items include syringes, needles, crack pipes, foil used for wrapping or cooking street drugs, and illegal substances being left on the floor in the form of powders, pills and/or capsules suspected of and/or appearing to be contraband substances. These items are all capable of causing injury, including punctures and lacerations, as well as toxicity, to people not wearing footwear.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 10

In addition, store employees have noted and reported the presence of feces, blood, urine and vomit left on the floors within the store, including the public shopping areas and the restrooms.

Store employees have observed and reported items including razors, knives and metal forks being on the floor of the store where customers circulate, all of which present a hazard to people not wearing footwear. The store's footwear policy is designed to at least attempt or lessen the risk of contact with or direct injury from this type of drug paraphernalia and debris.

Because of the debris, grease, food remnants, broken glass, etc., that can be on the floors of the store from time to time, the floors are mopped at least once per 8 hour shift, with spot cleaning or mopping as spills occur or foreign substances are identified in the store immediately upon the hazard being identified in order to eliminate hazards that put customers at risk. Cleaning materials used for floor cleaning and mopping are labeled with warnings to include washing hands after using and to avoid eye contact presumably to avoid toxicity from the chemical cleaning products. If patrons not wearing shoes were permitted on the premises, they would be placed at risk of a toxic or caustic exposure to these cleaning materials.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 11

Based on the foregoing, Niederquell's entry into the store without shoes presented a significant risk to his own health and safety. Thus, Defendants were entitled to enforce their footwear policy against Niederquell and prohibit him from entering the 7-Eleven while barefoot.

**3.     Defendants Were Entitled to Impose the Eligibility Criteria of Footwear Because the Criteria is Necessary for the Provision of Goods and Services in Defendants' Store.**

42 U.S.C. §12182(2)(b)(2)(A)(i), defines discrimination as including:

> (i)     The imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages or combinations, <u>unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;</u> (emphasis added).
>
> …

Under § 12182(b)(2)(A)(i), a prohibition is "necessary" if it is required for legitimate safety reasons, including the safety of the allegedly disabled customer himself. See *Campbell v. Universal City Development Partners, Ltd.,* 72 F.4th 1245, 1255 (11th Cir. 2023) Here, for all of the reasons set forth above, the requirement of footwear is necessary for Defendants' provision of goods and services in its store, primarily for the safety of patrons, including Niederquell. In addition, Dosanjh believes that in an establishment where food is served, cleanliness and

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 12

wholesomeness is necessary, and that bare feet and/or shirt-lessness can be viewed by customers as an indication of lack of hygiene and overall cleanliness of the facility. Dosanjh believes that permitting customers in its stores without shoes would conflict with and defeat Dosanjh policy and practice of presenting and maintaining a clean, inviting and wholesome environment for the service of food.

**4.    Defendants Were Not Required to Modify the Requirement that Patrons Wear Shoes Because Plaintiff has not Demonstrated that this is a Reasonable and Necessary Modification, and Making Such Modification Would Fundamentally Alter the Nature of the Goods, Services and Facility of Defendants.**

42 U.S.C. §12182(b)(A)(ii) describes discrimination as including:

> A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that <u>making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;</u> (emphasis added).

> …

This statute contemplates three inquires: (1) whether the requested modification is "reasonable"; (2) whether the requested modification is "necessary", and (3) whether the requested modification would "fundamentally alter the nature of" the goods, services, facilities, privileges, advantages or

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 13

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

accommodations of the defendant. *PGA Tour Inc., v. Martin,* 532 U.S. 661, 683 n.38, 121 S. Ct. 1879, 149 L.Ed.2d 904 (2001).

It is the plaintiff's burden to show that his requested accommodation is both necessary and reasonable, and if a defendant offers an accommodation, it is the plaintiff's burden to show that the offered accommodation was unreasonable. *Duval v. County of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001); *Larson v. Iboshi,* 441 Fed. Appx. 511, *514 (2011); *Selene v. Legislature of Idaho*, 514 F.Supp.3d 1243, 1257 (D.C. Idaho 2021).

### a. Niederquell Has Not Shown That His Requested Accommodation of Being Barefoot was Necessary.

Necessity under 42 U.S.C. §12182(b)(A)(ii), means that, without the accommodation, the plaintiff is unable to experience full and equal enjoyment of the defendant's goods, services, facilities, privileges advantages or accommodations. The necessity issue can be decided on summary judgment. See e.g. *Murphy v. Bowl,* 150 F. App'x 661, 663 (9th Cir. 2005). See also *Breyer v. Pacif*

Here, Niederquell's going barefoot was not necessary for Niederquell's full and equal enjoyment of Defendants' store. The summary judgment record makes it clear that Niederquell's aversion to footwear is simply a personal preference. On many and multiple occasions over the years, Niederquell has worn shoes or some type of protective footwear. What the record shows is that Niederquell wears shoes

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 14

or some type of protective footwear when he needs to, and goes barefoot when he can. Based on the summary judgment record, Niederquell has not demonstrated the existence of a material issue of fact on the necessity of him going barefoot in Defendants' store.

### b. **Niederquell Has Not Shown Going Barefoot Was Reasonable.**

With respect to the "reasonableness" requirement, a facility is not required to make any and all accommodations that would provide full and equal access to a disabled patron. Rather, a facility need only make accommodations "that are reasonable." *Baughman,* supra, at 1135. In deciding what is reasonable, facilities may consider "disruption of their business and safety." *Id.*

Defendants have been unable to locate any ADA (or state law counterpart) case, published or unpublished, that addresses the legality of a business's policy requiring patrons to wear shoes. However, the reasons for a place of public accommodation maintaining a policy requiring footwear were discussed in *Neinast v. Board of Trustees of the Columbus Metropolitan Library*, 346 F.3d 585 (6th Cir 2003). In that case, the plaintiff was denied access to defendant's library because he refused to wear shoes. His primary claim was that going shoeless was a form of expression protected by the First Amendment.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 15

While Neinast did not make an ADA claim, in affirming summary judgment dismissal of his case, the court addressed the reasonableness of the library's shoe policy:

> Here, the board has provided incident reports documenting various hazards to barefoot patrons, including the presence of feces on the floor of the restroom and in the reading area (*citations to record omitted*), vomit on the floor of the restroom and in the children's area (*citations to record omitted*), broken ceiling tiles on the floor of the restroom (*citation to record omitted*), splintered chair pieces in the children's area (*citation to record omitted*), drops of blood on the floor of the restroom (*citation of record omitted*), urine in the elevator, on the floor of the bathroom, on a chair in the reading area, and on the floor of the reading area (*citation to record omitted*), and broken glass in the lobby (*citation to record omitted*). The board has also submitted reports describing incidents where a patron scraped his arm on a staple in the carpet in the meeting room, causing bleeding (*citation to record omitted*), where a patron's foot went into a gap between the bottom of a door on the ground, causing a cut (*citation to record omitted*), and where a barefoot patron's toe was caught in the door, causing bleeding and requiring the assistance of paramedics (*citation to record omitted*). The board has thus demonstrated the existence of a significant health and safety risk to individual barefoot patrons.

346 F.3d at 593-94.

Here, the risks which the *Neinast* court described as a "significant health and safety risk to individual barefoot patrons" mirror many of the risks listed by Mr. Peterson in his declaration. These significant safety risks made Niederquell's request to go barefoot in Defendants' store unreasonable.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – Page 16**



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

### c.  **WLAD**

Like the ADA, the WLAD prohibits discrimination based on a disability. RCW 49.60, et seq. Although the WLAD offers protections "at least as broad" as those offered under the ADA, Washington courts look to Federal case law interpreting remedial statutes like the ADA and Title VI "to guide interpretation of the WLAD." *Taylor v. Burlington N.R.R. Holdings, Inc.,* 904 F.3d 846, 848-49 (9th Cir. 2018) (quoting *Kumar v. Gate Gourmet, Inc.,* 180 Wn.2d 481, 325 P.3d 193, 197-98 (2014).

Like the ADA, under WLAD a plaintiff must show that: (a) they have a disability; (b) the defendant is a place of public accommodation; (c) they were discriminated against "by receiving treatment that was not comparable to the level of designated services provided to individuals without disabilities by or at the place of public accommodation;" and (d) their disability was a "substantial factor causing the discrimination." *Fell v. Spokane Transit Authority,* 128 Wn.2d 618, 637 (1996).

Here, for all of the reasons Defendants are entitled to summary judgment dismissal of Niederquell's ADA claim, his WLAD claim should be dismissed as well.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 17

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

## IV.    CONCLUSION

Based on the foregoing argument and authorities, Defendants respectfully request that their motion for summary judgment be granted and that Niederquell's claims against them be dismissed, with prejudice.

**DATED** this 3rd day of April, 2026.

**EVANS, CRAVEN & LACKIE, P.S.**

*/s/ Christopher J. Kerley*
**CHRISTOPHER J. KERLEY, WSBA #16489**
**JAMES B. KING, WSBA #8723**
*Attorneys for Defendants*
818 W. Riverside Ave., #250, Spokane, WA 99201
P: (509) 455-5200 | F: (509) 455-3632

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** – Page 18

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of April, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System. Copies were served on the plaintiff via email and U.S. Mail as indicated below.

| Plaintiff – Pro Se: | |
|---|---|
| **JACOB NIEDERQUELL**<br>3722 E. Ermina Ave.<br>Spokane, WA 99217<br>E: Jakeniederquell@outlook.com | VIA REGULAR U.S. MAIL [X]<br>VIA OVERNIGHT MAIL [   ]<br>VIA CM/ECF SYSTEM [   ]<br>VIA EMAIL  [X] |

*/s/ Christopher J. Kerley*
**CHRISTOPHER J. KERLEY, WSBA #16489**
*Attorneys for Defendants*
818 W. Riverside Ave., #250, Spokane, WA 99201
P: (509) 455-5200 | F: (509) 455-3632

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT –** Page 19

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside Ave., Suite #250,
Spokane, WA 99201-0910
Phone: (509) 455-5200| Fax: (509) 455-3632